IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEBBIE KEITHLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 10-00602-N |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Debbie Keithley filed this action seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") that she was not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-433. Pursuant to the consent of the parties (doc. 19), this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R.Civ.P. 73. *See* Doc. 21. Further, plaintiff's unopposed motion to waive oral arguments (doc. 18) was granted on August 31, 2011 (doc. 20). Upon consideration of the administrative record (doc. 13), and the parties' respective briefs (docs. 14 and 15), the undersigned finds that the decision of the Commissioner is due to be **AFFIRMED.**

I. Procedural History.

Plaintiff filed an application for disability insurance benefits on November 5, 2008, claiming an onset of disability as of March 1, 2008 (Tr. 101, 111). Plaintiff was forty-seven years old at the time he filed his application (Tr. 93-94). The application was

denied on December 10, 2008 (Tr. 55) and plaintiff requested a hearing (Tr. 65) before an Administrative Law Judge ("ALJ"). Following a hearing on March 24, 2010 (Tr. 27-53), the ALJ issued an unfavorable decision on April 12, 2010 (Tr. 12-24). Plaintiff requested a review by the Appeals Council (Tr. 6-7) which was subsequently denied on August 28, 2009 (Tr. 1-5), thereby making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981 (2009).[1] Plaintiff has exhausted all his administrative remedies and now appeals from that final decision.

II. Issues on Appeal.

1. Whether the ALJ erred by failing to give controlling weight to the opinion of plaintiff's treating physician; and by substituting her own medical opinion for that of the treating physician.

2. Whether the ALJ erred by failing to recontact plaintiff's treating physician.

III. Findings of Fact and Conclusions of Law.

   A.   Alleged Impairment and Relevant Medical Evidence.

Plaintiff alleged that she became disabled on March 1, 2008 (Tr. 28, 101, 111), due to "neuropathy" which she described as "it hurts to walk . . . to stand on [her feet]" (Tr. 35). Plaintiff presented with complaints of lower extremity pain beginning in 2007 (Tr. 201). Examinations during 2007, 2008, and 2009, consistently revealed normal musculoskeletal system, normal reflexes and coordination, decreased sensation of the leg and foot, 4/5 strength in the lower extremities, and no motor dysfunction (Tr. 189, 197, 213, 215, 243-44, 249, 252).

On September 9, 2009, Kenneth Sherman, M.D., completed a Physical Capacities

---

[1] All references to the Code of Federal Regulations (C.F.R.) are to 1 the 2010 edition.

Evaluation (Tr. 264). Dr. Sherman opined that Plaintiff could sit for five hours during an eight-hour workday, and stand for five hours during an eight-hour workday (Tr. 264). He further opined that Plaintiff could lift and carry 11-20 pounds for one hour, 6-10 pounds for one hour, and up to 5 pounds for two hours (Tr. 264). Finally, Dr. Sherman answered "yes" to the question: "Can claimant work 8 hours per day, 40 hours per week, on a sustained basis, within the limitations given above, without missing more than 2 days work per month?" (Tr. 264).

  B. <u>Plaintiff's Testimony</u>.

Plaintiff testified that she could not work because her feet hurt, but medication somewhat helped control her foot pain (Tr. 35-36). Plaintiff further testified that her blood sugar was under control and that she treats it with diet. (Tr. 36). Plaintiff also testified that she had pain in her right arm and, although she can lift and carry up to 20 pounds on her "good days," otherwise she "can't pick anything up." (Tr. 36, 37). She testified she could sit for about 30 minutes and stand for about 10 to 15 minutes (Tr. 37).

  C. <u>Vocational Expert Testimony</u>.

Sue Berthaume testified as a vocational expert at plaintiff's administrative hearing (Tr. 44-52). According to Ms. Berthaume, plaintiff's past relevant work as a nursery school attendant is classified as being light with an SVP of 4, or semi-skilled. (Tr. 45). Plaintiff's past relevant work as a cook at the school is classified as being medium with an SVP of 6, or skilled. (Tr. 45). Ms. Berthaume further testified that plaintiff's past relevant work at the nursing home is classified as medium with an SVP of 4, or semi-skilled, but plaintiff's description of her duties in the summary she signed on January 28, 2010 (hereafter "Work Background")(Tr. 156) indicates that it was actually "performed

in the heavy range." (Tr. 45-46). Plaintiff's past relevant work as a baker or a bakery worker is classified as being heavy and skilled with an SVP of 7, although plaintiff's description in her Work Background indicates that she performed this job in the medium category. (Tr. 46, 156). Ms. Berthaume also testified that plaintiff's description of her past relevant work as set forth in her Work Background differed from her testimony at the hearing and that plaintiff's testimony at the hearing would indicate that her jobs were performed at the semi-skilled to unskilled level. (Tr. 46).

In response to the ALJ's first hypothetical[2], Ms. Berthaume testified that, although such an individual is not able to do plaintiff's past relevant work, the individual is able to work as a surveillance system monitor, which is sedentary and unskilled and as to which there's approximately 143,00 in the national economy and 2,800 in the state. In response to the ALJ's second hypothetical[3], Ms. Berthaume again testified that such an individual is not able to do plaintiff's past relevant work but that she is still "able to perform the surveillance system monitor position" as well as to work as a "production

---

[2] The ALJ's first hypothetical included an individual with plaintiff's work history and the following limitations: lifting and carrying no more than 20 pounds occasionally and ten pounds frequently; no overhead reaching with the right arm; no repetitive fingering; and no repetitive pushing and pulling of arm controls; no climbing ladders, scaffolds or ropes; no more than occasional bending or crawling; no squatting; and no reaching past bench height; no unprotected heights, dangerous equipment; no more than occasional temperature extremes or humidity and wetness, or exposure to concentrated environmental pollutants; no more than short, simple instructions or one and two step job instructions; would need to avoid complex or detailed instructions; with minimum changes in work settings and routines; and no work in crowds. (Tr. 46-47).

[3] The ALJ's second hypothetical changed plaintiff's limitations to the following: lifting and carrying no more than 20 pounds occasionally and ten pounds frequently; no overhead reaching no climbing ladders, scaffolds and ropes; and no unprotected heights and dangerous equipment; no operation of foot controls; the same restrictions as far as concentration, short simple instructions, one or two step job instructions; no complex or detailed instructions; and no work in crowds; and minimal changes in the work setting and routines. (Tr. 47-48).

assembler" with 330,000 available in the national economy and 15,000 in the state. Ms. Berthaume also added the work of a "microfilm processor" with 49,000 available in the national economy and approximately 200 in the state.

The ALJ's third hypothetical involved an individual with the same limitations as set forth in the first hypothetical but with the added "inability to work a full eight hour day as frequently as a day a week." (Tr. 49). The ALJ further explained that this individual "would not be able to get to work, or would have to leave the work station early, or may not go to work at all at least a day a week." (*Id.*) Ms. Berthaume testified that she could identify no jobs such an individual could perform.

### D. The ALJ's Decision.

Although plaintiff argues that the ALJ erred with respect to the weight given various medical opinions, she does not specifically challenge the ALJ's summary of both the medical evidence proffered in this case and plaintiff's testimony and other contentions, which is as follows, in pertinent part:

> The claimant has been diagnosed with diabetes. At the hearing, she testified her high blood sugar is controlled and treated with diet. On September 9, 2009, Kenneth Sherman, M.D. completed a "Diabetes Questionnaire." He reported the claimant's blood sugar levels are maintained in good control within normal limits but stated that she suffered physical limitations due to her diabetes. He stated the claimant's condition has a moderately severe limitation on her ability to perform work activity, although he did not specifically address how her condition limited her ability. (Exhibit 10F [Tr. 262-263]).
>
> Although the claimant's diabetes appears to be under control, she reported multiple episodes of dizziness and passing out to Dr. Sherman on February 16, 2009. (Exhibit 8F [Tr. 248-259]). Lab tests showed the claimant's microalbum level of 30 was above the maximum range of 20mg/L and that her glucose was one measurement above the maximum range of 110. (Exhibit 15F [Tr. 291-294]). The following month she described episodes of light headedness accompanied by a weak feeling and jitteriness to doctors at the Stanton Road Clinic. She stated that she had blacked out but was able to hear. (Exhibit 9F [Tr, 260-261]).

18

Therefore, I find the claimant's diabetes precludes her from working around unprotected heights or dangerous equipment.

At the hearing, the claimant testified that she has neuropathy in her feet which makes it painful to walk or stand. Therefore, she reported she stays off her feet as much as possible. She stated that she has pain in her feet up to 8-9 hours a day. She stated that Lyrica does not provide significant pain relief. She stated that she does not sleep well at night due to the pain in her lower extremities. She estimated she gets a restful sleep on average 4 nights a week. She reported she sleeps during the daytime about 1-2 times a week. The claimant testified she could lift and carry up to 20 pounds on a "good" day. She estimated she has good days 2-3 times a week. She estimated she could sit about thirty minutes before she begins to feel pain in her hips. She stated she could stand 10-15 minutes. She reported she can barely walk on "bad" days and, 4-5 days a week she only travels between the bathroom and her bed.

At the hearing, the claimant testified that she takes seven medications total. She reported her medications makes her very sleepy. She stated she has reported this side effect to Dr. Sherman. Office treatment notes do not corroborate those allegations. (Exhibits 2F, 8F and 15F [Tr. 185-211, 248-259, and 291-294]). The claimant's previous written statements in support of her application for disability do not support her allegations. In her initial Disability Report, the claimant reported she was taking Ditropan XL, Lasix, Lexapro, Lyrica, Naproxen, Pravastatin, Tramadol and B12 injections. For each medication, she listed "none" under the category of side effects. (Exhibit 1E [Tr. 110-118]). On January 28, 2010, the claimant submitted a nearly identical list of medications. She reported she was taking Ditropan, Lasix, Laxapro, Lyrica, Naproxen EC, Pravastatin, Tramadol, and injections for B-12. She also reported taking Gemfibrozil. (Exhibit 11E [Tr. 157]).

The claimant's medical records support and verify her complaints of lower extremity pain. The claimant has consistently reported pain in her feet and legs since September 19, 2007. (Exhibit 2F [Tr. 185-211]). Physical examinations have consistently demonstrated decreased sensation in the claimant's lower extremities. (Exhibits 2F, 3F, 7F, 8F, 15F [Tr. 185-211, 212-219, 243-247, 248-259, 291-294]). NVC/EMG testing showed sensory axonal neuropathy in 2008. (Exhibit 3F [Tr. 212-219]). On April 14, 2008, the claimant's feet exhibited swelling. On October 22, 2008, pain was elicited by motion of both hips and throughout the range of motion of the feet. (Exhibit 2F [Tr. 185-211]). The claimant has exhibited a decreased Babinski. (Exhibit 3F [Tr. 212-219]). The claimant received compression hose to treat her edema on July 30, 2008. (Exhibit 3F [Tr. 212-219]). She has exhibited a give away sensation in the bilateral lower extremities. (Exhibits 3F and 7F [Tr. 212-219 and 243-247]). On January 13,

2009, she exhibited tenderness on ambulation of the leg, and pain was elicited by motion of the foot. (Exhibit 8F [Tr. 248-259]).

However, despite the clinical and radiological deficits noted above, the medical record contains a considerable number of findings upon clinical examination that I find inconsistent with a claim of an inability to perform any sustained work activity. Clinical examinations have consistently exhibited at least a 4/5 strength in the lower extremities as well as 2+ deep tendon reflexes. The claimant has exhibited no dysmetria, ataxia or positive Romberg tests. (Exhibits 3F, 7F and 9F [Tr. 212-219, 243-247, and 260-261]). On February 16, 2009, the claimant's musculoskeletal and neurological systems were noted as normal. (Exhibit 8F [Tr. 248-259]). On March 19, 2009, her cranial nerves were grossly intact. (Exhibit 9F [Tr. 260-261]). On December 14, 2009, Dr. Davis noted no abnormalities of the claimant's gait or posture. (Exhibit 12F [Tr. 265-273]).

The claimant has reported activities which are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. At the hearing, the claimant testified that she generally spends 8-9 hours a day with her feet propped up and that on bad days she leaves her bed only to travel to the bathroom. However, the claimant also testified that she performs limited household chores, cooks and plays card games at her house and at friends. On December 14, 2009, the claimant reported she drove herself to the mental evaluation, a distance of 20 miles. (Exhibit 12F [Tr. 265-273]).

At the hearing, the claimant testified she has pain in both arms. She stated that she has pain throughout her right arm, particularly in the right shoulder when she moves her arm, and that she cannot use that are to lift objects. She testified that most of her upper extremity problem stem from her right arm.

The record reflects that the claimant failed to even mention these symptoms prior to August 2009. Despite regular reports of pain in the feet and legs during office visits, the first complaint regarding her upper extremities was noted on August 17, 2009. (Exhibits 2F, 3F, 7F, 8F, 9F and 15F [Tr. 185-219, 243-261, 291-294]). No abnormalities were noted on clinical examination of the claimant's upper extremities before August 2009. [*Id*.] In fact, the last physical examination prior to the claimant's complaint of upper extremity pain showed 5/5 strength in all extremities and normal sensation in the bilateral upper extremities. (Exhibit 9F [Tr. 260-261]). The claimant did not even report this impairment at the time the application was filed. This is despite the fact that the Disability Report specifically requests information about all conditions affecting the ability to work. Instead, the claimant stated her ability to work was limited by her diabetes, neuropathy in her legs and feet, vertigo and depression. Exhibit 1E [Tr. 110-118]). Even in a later function report dated December 5, 2008, the claimant did not describe symptoms consistent with those alleged at the hearing. She made one reference to any upper extremity limitations, noting "my hands cramp up and it is

18

difficult for me to crochet." She reported her ability to reach was limited because she could not "stand on tip toes." (Exhibit 4E [Tr. 133-140]).

The claimant's complaints of upper extremity pain are partially supported by findings her clinical examination on August 17, 2009. On that date, the claimant reported pain in the right shoulder and arm with particular pain in the elbow. She reported she had difficulty holding and using her right arm. During the physical examination, the claimant exhibited tenderness on palpation of the elbow and tenderness on palpation of the shoulders. Pain was elicited by motion of the elbows and the shoulder. Her shoulder joints did not have a full range of motion, and motion in her right shoulder was abnormal. (Exhibit 15F [Tr. 291-294]). However, X-rays performed on both shoulders the following day were normal, although the right shoulder was noted to have a short clavicle. [*Id.*] In addition, the medical record contains no evidence the claimant sought subsequent treatment for her upper extremity pain.

On January 25, 2005, the claimant underwent a video arthroscopy of the right shoulder and distal clavical resection. (Exhibit 13F [Tr. 274-289]). The record reflects that she worked for approximately two years following the surgery, which indicates this injury and subsequent surgery did not result in inability to sustain work. (Exhibits 3E and 10E [Tr. 122-132 and 156]).

Therefore, I find the claimant's lower extremity pain precludes her from lifting more than 20 pounds occasionally and 10 pounds frequently; climbing ladders, scaffolds or ropes; or operating foot controls. The claimant must have a sit/stand option due to her lower extremity pain. Due to her upper extremity pain, the claimant cannot perform overhead reaching.

In so finding, I have [given] Dr. Sherman's opinions some weight. On January 14, 2009, Dr. Sherman completed the claimant's application for handicap parking privileges. He reported the claimant could not walk two hundred feet without stopping to rest. (Exhibit 14 F [Tr. 290]). On September 9, 2009, Dr. Sherman completed a "Physical Capacities Evaluation." He opined the claimant could lift up to 5 pounds for two hours and 6-20 pounds for one hour in an eight hour day. He did not indicate whether the claimant could use her legs and feet for repetitive action but opined she could use her arms and hands for simple grasping but not pushing/pulling arm controls or fine manipulation. He reported that in an eight hour day the claimant could bend for two hours and crawl for one hour but could not squat, climb or reach. Dr. Sherman reported a mild restriction of the claimant's activities involving unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, driving automotive equipment, and exposure to dust, fumes and gases. (Exhibit 11F [Tr. 264]).

> Dr. Sherman's opinion is inconsistent with his treatment records and the medical record as a whole. Dr. Sherman indicated the claimant's ability to use her arms for repetitive motions was restricted but he did not address any limitations in her legs and feet. (Exhibit 10F [Tr. 262-263]). However, his office records reflect the claimant has consistently reported pain in her legs and feet since she began receiving treatment with Dr. Sherman nearly two years before. He even referred the claimant to a specialist for treatment of her lower extremity pain. (Exhibit 2F and 3F [Tr. 185-219]). Records at Stanton Road also reflect regular reports of lower extremity pain. (Exhibit 3F, 7F and 9F [Tr. 212-219, 243-247 and260-261]). In contrast, Dr. Sherman's office records contain only one complaint of upper extremity pain, less than a month before Dr. Sherman completed his evaluation of the claimants physical capacities. (Exhibit 15F [Tr. 291-294]).
>
> At the hearing, the claimant admitted activities inconsistent with Dr. Sherman's evaluation. The claimant testified that she performs household chores, such as cooking, cleaning and laundry. While she testified that she could no longer crochet, she acknowledged playing card games with friends in her leisure time. She said that her depression sometimes affected her ability to concentrate during the game but alleged no physical limitations of her abilities to finger and handle the cards.

(Tr. 18-20).

### E. Conclusions of Law.

#### 1. Standard of Review.

In reviewing claims brought under the Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is

defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).

2. Sequential Evaluation Process.

An individual who applies for Social Security disability benefits or supplemental security income must prove their disability. *See* 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven their disability. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. At the first step, the claimant must prove that he or she has not engaged in substantial gainful activity. At the second step, the claimant must prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If, however, the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this

burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity and age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also* Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (*citing* Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

      3.  Discussion.

          a. **The ALJ did not fail to give appropriate weight to Dr. Sherman's opinion or improperly substitute her own medical opinion for that of plaintiff's treating physician.**

Plaintiff contends that the ALJ "reversibly erred in failing to give controlling weight to the opinion of the Plaintiff's treating physician." (Doc. 14 at 2). Plaintiff also contends that the ALJ "substituted his [sic] own medical opinion" for that of Dr. Sherman. (*Id.*). However, according to the plaintiff's argument, the only distinction between Dr. Sherman's opinion and the ALJ's analysis involves plaintiff's ability to use her legs and feet "for repetitive action such as pushing/pulling of leg controls." (Doc. 14 at 5 and 6). Plaintiff concedes that the ALJ "is undoubtedly correct regarding Dr. Sherman's failure to provide an opinion regarding Plaintiff's ability to use her legs and

18

feet for repetitive actions." (Doc. 14 at 5). Plaintiff then argues that, because Dr. Sherman gave no opinion on this point, the ALJ must be held to have "pieced together her own [RFC]" and thus "substituted her won medical opinion for that of [Dr. Sherman]." (*Id*. at 6). Plaintiff also argues, however, that only if Dr. Sherman had indicated that plaintiff "*could* use her legs and feet for repetitive action" would his opinion "have been inconsistent with Plaintiff's repeated complaints of pain and swelling in her lower extremities." (*Id*. at 6, emphasis in original).

Controlling weight may only be given to a treating physician's medical opinions that are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The Eleventh Circuit recently addressed this issue as follows:

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." Lewis, 125 F.3d at 1440; see also 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241. With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. Id. at 1240–41.

Winschel v. Commissioner of Social Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). *see also* Kennedy v. Astrue, 2010 WL 1643248, at *7 (S.D. Ala. Apr. 21, 2010) (treating physician's opinion not given controlling weight where opinion was not supported by treatment notes).

The ALJ in this case gave Dr. Sherman's opinion "some weight." (Tr. 20). The ALJ discounted only one aspect of Dr. Sherman's opinion, namely the unsupported

18

restriction on plaintiff's ability to use her arms for repetitive motions. (Tr. 20 and 264). The ALJ discounted this opinion because it "is inconsistent with his treatment records and the medical record as a whole." (Tr. 20). As the ALJ noted, "Dr. Sherman's office records contain only one complaint of upper extremity pain, less than a month before Dr. Sherman completed his evaluation of the plaintiff's physical capacities." (Tr. 20, *citing* Tr. 264). The ALJ further concluded that any restriction on plaintiff's ability to use her arms other than the weight restrictions imposed by Dr. Sherman was inconsistent with plaintiff's testimony. The ALJ specifically noted that :

> At the hearing, the claimant admitted activities inconsistent with Dr. Sherman's evaluation. The claimant testified that she performs household chores, such as cooking, cleaning and laundry. While she testified that she could no longer crochet, she acknowledged playing card games with friends in her leisure time . . . [and] alleged no physical limitations in her ability to finger and handle the cards.

(Tr. 20). Plaintiff does not challenge this finding by the ALJ. Plaintiff only contends that, because Dr. Sherman failed to indicate whether plaintiff could use her legs and feet for repetitive action, the ALJ necessarily substituted her own opinion for that of Dr. Sherman.

However, as demonstrated above, the ALJ clearly incorporated every limitation imposed by Dr. Sherman in his RFC dated September 9, 2009. *Cf.* Tr. 46-49 and 264. In addition, the ALJ specifically incorporated into her second hypothetical the very opinion plaintiff contends is **_not_** inconsistent with her condition and Dr. Sherman's medical records, namely that she could not use her legs and feet for repetitive action. The ALJ specifically stated in her second hypothetical that there could be "no operation of foot controls." (Tr. 47-48). Consequently, by plaintiff's own reasoning, the RFC applied in

18

this case, as set forth in the ALJ's second hypothetical, is supported by substantial evidence in the record. The ALJ did not, therefore, improperly substitute her own medical opinion for that of the treating physician.

### b. **The ALJ did not err by failing to recontact plaintiff's treating physician.**

Contrary to Plaintiff's argument (doc. 14 at 6-7), the ALJ was not required to recontact Dr. Sherman for clarification of his opinion concerning plaintiff's ability to use her feet and legs for repetitive motion. "[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty'." White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002) (citing 20 C.F.R. § 416.912(e)). Here, the record contained sufficient evidence from which the ALJ could evaluate Dr. Sherman's opinion on that singular point, particularly inasmuch as Dr. Sherman had concluded not only that the plaintiff could stand for 5 hours in an eight hour workday and sit for 5 hours in an eight hour workday but that plaintiff could "work 8 hours per day, 40 hours per week, on a sustained basis within the limitations given [by Dr. Sherman]." (Tr. 264). As the Eleventh Circuit made clear in Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997):

> Here, the record as a whole is neither incomplete nor inadequate. Instead, the record was sufficient for the ALJ to evaluate Graham's impairments and functional ability, and does not show the kind of gaps in the evidence necessary to demonstrate prejudice. . . .In addition, the ALJ's questioning brought out all aspects of how Graham's symptoms affected her.

129 F.3d at 1423. Similarly, in McConnell v. Schweiker, 655 F.2d 604, 606 (11th Cir. 1981), the Eleventh Circuit held not only that "the record demonstrates that the ALJ fully

18

and fairly developed the facts relevant to McConnell's claim, and that McConnell was not prejudiced by lack of counsel" but that "[w]e do not think that this ALJ was remiss in questioning McConnell in the way he did." In Nelm v. Bowen, 803 F.2d 1164, 1165 (11th Cir. 1986), remand was required only because the ALJ determined that the claimant retained the residual functional capacity to perform her past relevant work despite "the absence of evidence of the physical requirements and demands of appellant's [past relevant] work." *See also* Welch v. Bowen, 854 F.2d 436, 439 (11th Cir. 1988)("[T]he ALJ's exclusive reliance upon the grids to make his determination on job availability was inappropriate under the circumstances."); Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir, 1981)("[T]he ALJ did not elicit testimony from a vocational expert, nor any other testimony, regarding specific jobs that Mrs. Cowart is able to perform [and thereby] failed to meet his duty of developing a full and fair record.").

The present case is also distinguishable from Brown v. Shalala, 44 F.3d 931 (11th Cir. 1995), in which the Eleventh Circuit held:

> We do not mean to suggest that a remand is warranted any time a claimant alleges that the ALJ has neglected to complete the record. The likelihood of unfair prejudice to a claimant may arise, however, where as here, the evidentiary gap involves recent medical treatment, which the claimant contends supports her allegations of disability, or the receipt of vocational services.

44 F.3d at 936, n. 9. Unlike Brown, the ALJ in the present case obtained the testimony of a vocational expert who was subject to cross-examination by the plaintiff.

In Gallina v. Comm'r of Soc. Sec., 202 Fed. Appx. 387, 388 (11th Cir. 2006), the Eleventh Circuit again emphasized that, "[w]hile the ALJ has a basic obligation to develop a full and fair record, medical sources generally need only be re-contacted when

18

the evidence received from that source is inadequate to determine whether the claimant is disabled." Here, Dr. Sherman's record was not inadequate to determine whether plaintiff was disabled and, in fact, refutes that contention. (Tr. 264). There was no need for the ALJ to recontact Dr. Sherman. Dr. Sherman's opinion was in fact incorporated into the ALJ's second hypothetical and resulted in evidence presented by the Vocational Expert that work exists in significant numbers in the national economy that the plaintiff can do. (Tr. 23-24 and 47-49).

V. **Conclusion**.

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff's benefits be and is hereby **AFFIRMED**.

**DONE** this  16th  day of September, 2011.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**